**BRODSKY & SMITH**
Evan J. Smith, Esquire
esmith@brodskysmith.com
240 Mineola Boulevard
Mineola, New York 11501
Phone: 516.741.4977
Facsimile: 516.741.0626

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERRY KNAUFF,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>SPIRIT OF TEXAS BANCSHARES, INC., DEAN O. BASS, ROBERT S. BEALL, NELDA LUCE BLAIR, ALLEN C. JONES IV, THOMAS JONES, JR., STEVEN KIDD, DAVID M. MCGUIRE, LEO T. METCALF III, STEVEN M. MORRIS, WILLIAM K. NIX, AKASH J. PATEL, H.D. PATEL, THOMAS C. SOOY,<br><br>　　　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Jerry Knauff ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.　　Plaintiff brings this stockholder action against Spirit Of Texas Bancshares, Inc. ("Spirit" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), and collectively with the Company and the Board, the "Defendants"),

for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Simmons First National Corporation ("Parent" or "Simmons") as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a November 19, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Spirit will become an indirect wholly-owned subsidiary of Parent. Shares of Spirit's common stock and Spirit's restricted stock units will be converted into the right to receive shares of Simmons' common stock, and Spirit's stock options and warrants will be cashed out.

3.      Thereafter, on December 22, 2021, Simmons filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, neither the Merger Agreement nor the Registration Statement contains enough information for Plaintiff or other Public Stockholders to determine what consideration they will get in exchange for their Spirit stock, indicating only the amount of Simmons stock which will be issued and that it will be apportioned amongst the outstanding stock of Spirit at the time of the consummation of the Proposed Transaction.

5.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all

Company equity awards for cash consideration – which is disparate from the consideration which Plaintiff and all other public stockholders of the Company will receive.

6.        In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on December 22, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.   The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Spirit and Simmons, provided by Spirit and Simmons to the Company's financial advisor Stephens Inc. ("Stephens") and Simmons' financial advisor Keefe, Bruyette & Woods, Inc. ("KBW"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Stephens and KBW, if any, and provide to the Company and the Board.

7.        Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.        Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Spirit stockholder.

9.        Defendant Spirit is a leading financial institution in the United States. Spirit is incorporated under the laws of the State of Texas and has its principal place of business at 1836 Spirit of Texas Way, Conroe, TX 77301.  Shares of Spirit common stock are traded on the Nasdaq under the symbol "STXB".

10.     Defendant Dean O. Bass ("Bass") has been a Director of the Company at all relevant times.  In addition, Bass serves as the Company's Chief Executive Officer ("CEO") and the Chairman of the Board of Directors.

11.     Defendant Robert S. Beall ("Beall") has been a director of the Company at all relevant times.

12.     Defendant Nelda Luce Blair ("Blair") has been a director of the Company at all relevant times.

13.     Defendant Allen C. Jones, IV ("Jones IV") has been a director of the Company at all relevant times.

14.     Defendant Thomas Jones, Jr. ("Jones, Jr.") has been a director of the Company at all relevant times.

15.     Defendant Steven Kidd ("Kidd") has been a director of the Company at all relevant times.

16.     Defendant David M. McGuire ("McGuire") has been a director of the Company at all relevant times. McGuire also serves as the Company's President and Chief Lending Officer ("CLO").

17.     Defendant Leo T. Metcalf, III ("Metcalf") has been a director of the Company at all relevant times.

18.     Defendant William K. Nix ("Nix") has been a director of the Company at all relevant times.

19.     Defendant Akash J. Patel ("A. Patel") has been a director of the Company at all relevant times.

20.     Defendant H.D. Patel ("H.D. Patel") has been a director of the Company at all relevant times.

21.     Defendant Thomas C. Sooy ("Sooy") has been a director of the Company at all relevant times.

22.     Defendants identified in ¶¶ 10 – 21 are collectively referred to as the "Individual Defendants."

23.     Non-Party Simmons is a multibank holding company. Simmons offer various loans, credit card services, checking and savings accounts, personal and corporate trust services, and other products and services through offices located in Arkansas. Simmons is incorporated under the laws of Arkansas and has its headquarters in Pine Bluff, AR. Simmons' common stock is publicly traded on Nasdaq under the symbol "SFNC".

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

27.     Spirit offers checking, money market, savings, and individual retirement accounts, as well as various certificates of deposit. The company also provides commercial and industrial loans; 1-4 single family residential real estate loans; construction, land, and development loans; commercial real estate loans, such as owner and nonowner-occupied commercial real estate loans, multifamily loans, and farmland loans; consumer loans and leases; and municipal and other loans. The Company was founded in 2008 and is headquartered in Conroe, Texas.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the October 27, 2021 Earnings Call announcing its 2021 Q3 financial results, the Company highlighted such milestones as a net income of $10.5 million in the third quarter of 2021, compared to net income of $7.1 million in the third quarter of 2020. Additionally, the company had increased its quarterly dividend to $0.12 from $0.09 per share.

29.     Speaking on these positive results, CEO Dean Bass commented on the Company's positive results as follows, ""I would like to commend the Spirit team on another outstanding quarter of impressive financial and operational results." He discussed the positive results further by stating "Third quarter asset quality continued to improve with further reductions in

nonperforming loans and lower charge off activity. Finally, we are pleased that our capital levels have grown stronger quarter after quarter, providing Spirit with a clear runway for growth opportunities in the coming quarters,"."'"

30.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Spirit.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Spirit to enter into the Proposed Transaction without providing requisite information to Spirit stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means.

33.     Significantly, neither the Merger Agreement nor the Registration Statement contains enough information for Plaintiff or other Public Stockholders to determine what consideration they will get in exchange for their Spirit stock.  Rather these documents indicate only the amount of Simmons stock which will be issued and that it will be apportioned amongst the outstanding stock of Spirit at the time of the consummation of the Proposed Transaction.  As the amount of Spirit stock can change, perhaps dramatically, in the time before the consummation of the Proposed Transaction, this has left Plaintiff as a common Company stockholder in a precarious position of not knowing the value of the merger consideration until the effective time, giving him no real way of evaluating whether or not to vote in favor the Proposed Transaction.

34.     In addition, the Registration Statement fails to provide adequate information as to why the Board entered into a Proposed Transaction in which Company options and other equity awards to be cashed out as a consequence of the Proposed Transaction's consummation and allow Company insiders to receive cash consideration for these holdings – very disparate treatment from Plaintiff and other public stockholders of the Company.

35.     The Registration Statement also fails to provide adequate information regarding the "Spirit Strategic Committee", including whether this committee was composed of independent disinterested directors, and if not, the specific reasoning.

36.     Furthermore, the Registration Statement does not disclose adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range.

37.     In addition, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Simmons, whether this agreement differed from any other agreement with potentially interested third parties, including those not specifically mentioned by the Registration Statement, and if so in what way, and if the terms of any such agreements included "don't-ask, don't-waive" provisions or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away.

38.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

39.     On November 19, 2021, Spirit and Parent issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**NOVEMBER 19, 2021 8:00AM EST**

*Transaction will significantly enhance Simmons' scale in the Lone Star State; complement existing footprint while expanding into high-growth metro markets - Austin, Houston, San Antonio, Corpus Christi and Bryan-College Station*

**PINE BLUFF, ARK. AND CONROE, TEXAS,** Nov. 19, 2021 (GLOBE NEWSWIRE) -- Simmons First National Corporation (NASDAQ: SFNC) ("Simmons" or "Company") and Spirit of Texas Bancshares, Inc. (NASDAQ: STXB) ("Spirit") announced today the execution of a definitive merger agreement (the "Merger Agreement") pursuant to which Simmons will acquire Spirit, and its wholly-owned subsidiary, Spirit of Texas Bank SSB (the "Proposed Transaction"), in a transaction consisting of a mixture of cash and Simmons' common stock with an aggregate value of approximately $581 million, based on the Simmons' closing stock price of $31.73 on November 17, 2021.

Under the terms and subject to the conditions of the Merger Agreement, shares of Spirit's common stock and Spirit's restricted stock units will be converted into the right to receive shares of Simmons' common stock, and Spirit's stock options and warrants will be cashed out.

Spirit is a Texas-based bank holding company that operates 37 locations primarily in the Texas Triangle – the fastest growing megaregion in the U.S. consisting of the Dallas-Fort Worth, Houston, San Antonio and Austin metropolitan areas – with additional locations in the Bryan-College Station, Corpus Christi and Tyler metropolitan areas, along with offices in North Central and South Texas. As of September 30, 2021, Spirit had total assets of $3.2 billion, total loans of $2.3 billion and total deposits of $2.7 billion.

Financial highlights for Simmons, Spirit and on a pro forma basis are shown below (unaudited as of September 30, 2021, except where otherwise noted):

| ($ in billions) | Simmons | Spirit of Texas | Pro Forma |
|---|---|---|---|
| Assets | $25.1 | $3.2 | $28.2 |
| Loans | 12.4 | 2.3 | 14.6 |
| Deposits | 19.6 | 2.7 | 22.3 |
| Branches | 209 | 37 | 246 |
| Texas market share rank [1] | 47th | 38th | 26th |

*Source: S&P Global Market Intelligence [1] Based on deposit market share data as of June 30, 2021*
*Note: Simmons data includes the pro forma results of Landmark Community Bank and Triumph Bancshares, Inc.which were acquired by the Company on October 8, 2021.*

"Spirit is a highly regarded, high performing bank with whom we share a common philosophy – providing outstanding customer service and developing deep and long-lasting relationships with the clients and communities that we serve and where we live," said George Makris, Jr., Simmons' Chairman and CEO. "Strengthening

our Texas franchise has been a strategic priority and to partner with Spirit not only enhances our current footprint, but also establishes a platform for growth in Houston, Austin, San Antonio and College Station. These markets have been among the fastest growing in the nation in terms of population and economic activity and projections call for this trend to continue. We believe this merger places us in an advantageous position to capture future growth in the Lone Star State."

Makris added, "In addition to cultural and geographic synergies, the financial metrics of this merger are consistent with our stated M&A parameters and strategy of partnering with high-quality banks within our current footprint that represent an efficient use of our capital and deliver on our commitment of building long-term value for our shareholders. We're very pleased to welcome our newest partners to the Simmons organization, including Dean Bass, who will join our board shortly after closing as an independent director, and David M. McGuire, who will provide leadership as a key member of our executive team in Texas."

Dean O. Bass, Chairman and CEO of Spirit, commented, "The foundation of Spirit was built upon offering products and services that meet our customers financial needs and delivering an exceptional customer experience that is supported by a diverse and experienced team who are positioned in some of the most attractive markets in the Heart of Texas. By joining forces with Simmons, we recognize the opportunity to align with a partner that shares our passion for providing high-quality customer service, the increased capacity to lend by leveraging a larger balance sheet and access to a broader array of products and services, including leading-edge digital capabilities. We believe the opportunity to join the Simmons team is very positive for our organization and will provide greater benefits to our customers and the communities we serve."

The Proposed Transaction culminates an eventful year for Simmons. In October, Simmons completed the acquisitions and conversions of Tennessee based Landmark Community Bank ("Landmark") and Triumph Bancshares, Inc. ("Triumph"), the parent company of Triumph Bank. Based on FDIC deposit market share data as of June 30, 2021, prior to the Landmark and Triumph acquisitions, Simmons Bank ranked as the 11th largest bank in Tennessee. On a pro forma basis (including Landmark and Triumph Bank deposits at June 30, 2021), Simmons Bank now ranks as the 8th largest bank in Tennessee, the 7th largest bank in the Memphis metropolitan area and the 14th largest bank in the Nashville metropolitan area based on FDIC deposit market share data as of June 30, 2021.

Under the terms of the Merger Agreement, Simmons will issue approximately 18,325,000 shares of its common stock, subject to certain conditions and potential adjustments, including substituting cash for Simmons' common stock to the extent necessary to cash out Spirit's stock options and warrants. The Proposed Transaction is estimated to be accretive to Simmons' earnings per share by approximately $0.22 per share (9.8 percent) in 2023. The estimated transaction returns are consistent with Simmons' stated acquisition criteria pertaining to tangible book value and

targeted internal rates of return. Simmons expects to achieve cost savings of approximately 35 percent of Spirit's noninterest expense base, with approximately 50 percent achieved in 2022 and 100 percent thereafter. While revenue synergies have been identified, they have not been included in any estimates or projections.

The Proposed Transaction, which was approved by the boards of directors of Spirit and Simmons, is subject to approval by Spirit's shareholders, regulatory approval and other customary closing conditions. Pending the satisfaction of these approvals and other conditions, Simmons expects to close the Proposed Transaction during the second quarter of 2022.

***Potential Conflicts of Interest***

40. The breakdown of the benefits of the deal indicate that Spirit insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Spirit.

41. First and foremost, the Registration Statement indicates that holders of Company equity awards, overwhelmingly Company Insiders, will be able to cash these awards out upon the consummation of the Proposed Transaction. Such consideration is disparate from that received by Plaintiff as a public Company stockholder. Despite this, the Registration Statement fails to provide an accounting of such holdings, further obscuring the disparate treatment.

42. Additionally, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, the Registration Statement fails to provide an accounting of such holdings, or how much consideration will be paid to Company insiders upon the consummation of the Proposed Transaction.

43. Further, certain employment agreements with certain Spirit executives, entitle such executives to severance packages should their employment be terminated under certain

circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Spirit common stockholders. Notably these payments will be granted to Company insiders as follows:

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Dean O. Bass | 5,150,000 | 2,982,718 | 81,817 | 8,214,535 |
| David M. McGuire | 3,045,000 | 3,115,622 | 108,188 | 6,268,810 |
| Jerry D. Golemon | 682,500 | 1,276,630 | 56,704 | 2,015,834 |
| Allison S. Johnson | 607,500 | 334,135 | 68,028 | 1,009,663 |

44.     The Registration Statement must adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45.     Thus, while the Merger is not in the best interest of Spirit stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

46.     On December 22, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation of the Exchange Act, failed to provide the Plaintiff in his capacity as a Company stockholder with material information necessary to make a decision regarding whether to vote in favor of the Proposed Transaction and/or provides him with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up*
*to the Proposed Transaction*

47.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

    a.  Adequate information for Plaintiff or other Company Public Stockholders to determine what consideration they will get in exchange for their Spirit stock;

    b.  Adequate information regarding the specific reasons as to why the Board entered into a Proposed Transaction in which Company options and other equity awards to be cashed out as a consequence of the Proposed Transaction's consummation and allow Company insiders to receive cash consideration for these holdings – very disparate treatment from Plaintiff and other public stockholders of the Company;

    c.  Whether the Spirit Strategic Committee was composed of independent, disinterested Board members, and if not, the specific reasons;

    d.  Adequate information as to why the Board agreed to the merger consideration without the protections of a collar mechanism to keep the merger consideration within a reasonable range;

    e.  Whether the confidentiality agreements entered into by the Company with Simmons differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way;

 f. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Simmons, would fall away;

 g. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Spirit's and Simmons' Financial Projections*

48. The Registration Statement fails to provide material information concerning financial projections for Spirit and Simmons provided by Spirit and Simmons management and relied upon by Stephens in its analyses. The Registration Statement discloses management-prepared financial projections for the Company and Parent which are materially misleading

49. Notably, the Registration Statement reveals that, as part of its analyses, Stephens "reviewed certain internal financial statements, management reports and other financial and operating data concerning Spirit and Simmons prepared by management of Spirit and Simmons, respectively".

50.     As such, the Registration Statement should have, but fails to provide, certain information in the projections that Spirit and Simmons management provided to the Board and Stephens.  Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

51.     With respect to the Projections for Spirit provided, the Registration Statement fails to disclose material line items for the following metrics:

      a.  Spirit Net Income, including all underlying inputs and assumptions used to determine this metric;

      b.  Spirit Total Assets, including all underlying inputs and assumptions used to determine this metric; and

      c.  Spirit EPS, including all underlying inputs and assumptions used to determine this metric.

52.     The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

53.     In addition, despite Stephens indicating that it utilized them in its financial analyses, the Registration Statement fails to provide any projection metrics whatsoever for Simmons.

54.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, Simmons' true worth and therefore the value of the Merger Consideration, the accuracy of Stephens' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stephens*

56.     In the Registration Statement, Stephens describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

57.     With respect to the *Summary of Proposed Transaction* analysis, the Registration Statement fails to disclose the following:

      a.  Transaction Value, including all specific inputs and assumptions used to determine this metric, such as the amount of common stock of the Company outstanding;

      b.  Tangible Book Value per Share, including all specific inputs and assumptions used to determine this metric; and

      c.  Core Deposit Premium per Share, including all specific inputs and assumptions used to determine this metric.

58.     With respect to the *Relevant Nationwide Public Companies Analysis*, the Registration Statement fails to disclose the following:

     a.   The specific metrics for each Comparable Company;

     b.   Tangible Book Value per Share, including all specific inputs and assumptions used to determine this metric; and,

     c.   The specific valuation results of the analysis for Spirit.

59.     With respect to the *Relevant Nationwide Transactions Analysis*, the Registration Statement fails to disclose the following:

     a.   The specific metrics for each selected transaction;

     b.   The date on which each selected transaction closed;

     c.   The aggregate value of each selected transaction;

     d.   Transaction Value, including all specific inputs and assumptions used to determine this metric, such as the amount of common stock of the Company outstanding;

     e.   Tangible Book Value per Share, including all specific inputs and assumptions used to determine this metric;

     f.   Core Deposit Premium per Share, including all specific inputs and assumptions used to determine this metric; and

     g.   The specific valuation results of the analysis for Spirit.

60.     With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

     a.   The specific inputs and assumptions upon which the utilized 8% growth rate as applied to the Company 2021 through 2023 EPS was determined;

     b.   The Company's projected after-tax fee cash flows for the projected period utilized, and the specific inputs and assumptions used to determine them;

c. The specific inputs and assumptions used to determine the utilized terminal earnings multiple of 12.0x;

d. The amount of dividend payments for earnings and excess capital above a tangible common equity utilized, and the specific inputs and assumptions used to determine them;

e. The specific inputs and assumption used to determine the tangible asset ratio of 9.0% from 2021 to 2021;

f. The present value of Spirit's implied terminal value at the end of such period, and the specific inputs and assumptions used to determine it;

g. The specific inputs and assumptions used to determine the utilized 2026 estimated earnings and multiples of 11.0x to 13.0x; and

h. The specific inputs and assumptions used to determine the utilized discount rate range of 9.0% to 11.0%.

61. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Spirit stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## <u>(Against All Defendants)</u>

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

66.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

67.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

70.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

73.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Spirit's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

75.     The Individual Defendants acted as controlling persons of Spirit within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Spirit to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Spirit and all of its employees.  As alleged above, Spirit is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of

material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 20, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Attorneys for Plaintiff*